**AERO CORPORATION, S.A., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–416C.

United States Court of Federal Claims.

July 8, 1997.

Robert J. Martinez, Washington, DC, for plaintiff. Barbara E. Wixon and Williams & Jensen, P.C., of counsel.

Joseph A. Kijewski, Department of Justice, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director, Civil Division; and John E. Lariccia, Greg Petkoff, and Marian E. Sullivan, Department of the Air Force, Office of the General Counsel, of counsel.

### OPINION AND ORDER

FUTEY, Judge.

This matter is presently before the court on plaintiff's motion to compel discovery and defendant's opposition thereto. In its motion, plaintiff asks the court to compel the discovery of three specific documents or categories of documents. In addition, plaintiff's counsel requests the court's permission to depose eleven government employees who were involved in the procurement-related activities that form the basis of plaintiff's complaint.

#### Factual Background [1]

On February 11, 1997, defendant, acting through the Department of the Air Force,

---

1. The facts of the case are more thoroughly set out in the court's opinion and order dated June 20, 1997.

issued Solicitation No. F41608–96–R–0254 (the solicitation). The purpose of the solicitation was "to determine whether the C–5 depot maintenance activity currently performed at the San Antonio Air Logistics Center[, Kelly Air Force Base, Texas,] should be privatized or transferred to another public depot for performance."[2] Plaintiff submitted its proposal in response to the solicitation on April 14, 1997.

Approximately one month later, defendant notified plaintiff, by letter, that its proposal had been eliminated from the competitive range. Included with the notification letter was a "Competitive Range Determination" (the Determination), which provided the basis for the Source Selection Authority's (SSA) decision to exclude plaintiff's proposal from the competitive range. The Determination asserts that plaintiff's proposal did not adequately address the essential requirements of the solicitation. In that regard, the Determination specifically identifies six requirements and their alleged deficiencies.

Plaintiff received a debriefing from defendant regarding the elimination of its proposal from the competitive range on June 4, 1997. During the debriefing, defendant gave a slide presentation that identified the allegedly deficient technical areas in plaintiff's proposal with either a red or a yellow marking. Significantly, red markings denote areas of deficiency that are uncorrectable. By contrast, yellow markings indicate deficiencies that, although significant, are nevertheless correctable. Of the technical areas identified by defendant as deficient, three were given red markings and two were given yellow markings. In addition, plaintiff's cost proposal was deemed to be incomplete and unrealistic.

Arguing that defendant acted improperly in deciding to exclude plaintiff's proposal from the competitive range, plaintiff filed an application for a temporary restraining order and motion for preliminary injunction on June 12, 1997. On the same date, plaintiff also filed a complaint seeking injunctive and declaratory relief, as well as recovery of its bid preparation costs. By opinion and order dated June 20, 1997, this court denied plaintiff's application for a temporary restraining order and motion for preliminary injunction.

On June 27, 1997, plaintiff filed a motion to compel discovery. In its motion, plaintiff seeks to compel the production of: (1) any unredacted copies of the Competitive Range Briefing to the SSA (SSA Briefing)[3]; (2) all documents relating to defendant's evaluation of the cost aspects of plaintiff's proposal, especially plaintiff's wage rate and alleged wage rate subsidization plans; and (3) all documents pertaining to defendant's contacts with the Greater Kelly Development Corporation (GKDC) concerning lease costs and best-and-final offers (BAFOs). In addition, plaintiff's counsel requests the court's permission to depose eleven of defendant's employees, nine of whom are listed by name, who were involved in the competitive-range evaluation process. As the basis for this discovery, plaintiff asserts that supplementation of the present record is necessary to afford a full understanding of defendant's decision to exclude plaintiff's proposal from the competitive range. Defendant maintains that the record adequately explains its decision and the requested discovery is unwarranted.

### Discussion

This court's jurisdiction to consider pre-award bid protest actions challenging the propriety of defendant's procurement activities is set out in the Tucker Act, 28 U.S.C. § 1491 (1994), *as amended by* Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, 3874–75 (1996). Of particular relevance to the present action is § 1491(b)(4), which instructs that the court shall review defendant's procurement decisions in accordance with the standards set out in the Administrative Procedures Act, 5 U.S.C. § 706 (1994). Thus, the court's review generally should be based upon an examination of the "whole record" before the agency, *i.e.*, the material that was developed and considered by the agency in making its decision. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

---

**2.** Solicitation Documents, Complaint for Injunctive and Declaratory Relief, Attachment 1 at 1.

**3.** A redacted version of the SSA Briefing is included at tab 4 of the administrative record.

The focal point for judicial review therefore "should be the administrative record already in existence, not some new record made initially by the reviewing court." *Id.; see also Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985).

■ Undeniably, the limited nature of the court's inquiry dictates that "the primary focus of the court's review should be the materials that were before the agency when it made its final decision." *Cubic Applications, Inc. v. United States,* 37 Fed. Cl. 345, 349–50 (1997) (citing *Cubic Applications, Inc. v. United States,* 37 Fed. Cl. 339, 343 (1997) (*Cubic I*)). In most bid protests, however,

> the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery, aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action. It follows that discovery as well as the breadth of the court's review has to be tailored in each case. Whether testimony is needed to frame the issues is likewise dependent on the particular circumstances. Consequently this court has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry.

*Id.* at 350.

■ As such, in limited situations, the court may consider " 'extra-record' evidence." *Cubic I,* 37 Fed. Cl. at 342; *see also Graphicdata v. United States,* 37 Fed. Cl. 771, 779

(1997). Specifically, the court may consider such evidence: (1) when the agency's action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage. *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989) (quoting Steven Stark & Sarah Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L.Rev. 333, 345 (1984)). It is well-settled that these exceptions apply to bid protest actions brought in this court. *See, e.g., Graphicdata,* 37 Fed. Cl. at 779; *Cubic I,* 37 Fed. Cl. at 342; *Stapp Towing Inc. v. United States,* 34 Fed. Cl. 300, 307–08 (1995); *IMCO v. United States,* 33 Fed. Cl. 312, 317 (1995), *aff'd,* 97 F.3d 1422 (Fed.Cir.1996). It is within this framework that this court considers plaintiff's request to supplement the record presently before the court. *See Cubic I,* 37 Fed. Cl. at 342 (noting that the appropriateness of supplementation depends upon the particular circumstances of a case).

In arguing that the court should permit supplementation of the record in the present case, plaintiff relies upon three of the *Esch* exceptions. Specifically, plaintiff contends that: (1) the administrative record, as it stands, fails to adequately explain defendant's decision to exclude plaintiff from the competitive range; (2) it appears defendant, in making its decision, had evidence before it that is not part of the record; and (3) plaintiff and the court are entitled to the additional information in order to understand defendant's decision. Plaintiff further insists that its discovery requests are "narrowly prescribed to allow a complete understanding of

the actions taken in this matter." [4] Defendant responds that no discovery should be allowed because the present record provides an adequate basis upon which the court may review defendant's decision to exclude plaintiff from the competitive range.

As previously noted, plaintiff seeks the production of three documents or categories of documents. First, plaintiff asks that the court order defendant to produce to plaintiff an unredacted copy of the SSA Briefing. This court's *in camera* review of the unredacted version of the SSA Briefing has shown that the redacted portions are not relevant to defendant's evaluation of plaintiff's proposal. Accordingly, this court denies plaintiff's request for discovery of an unredacted copy of the SSA Briefing.

Also regarding the matter of the SSA Briefing, this court on its own recommendation orders defendant to produce to plaintiff, and file with the court, a copy of page 56 of the unredacted SSA Briefing. That particular page discusses plaintiff's source of repair qualifications and makes no reference to any other offerors. Such information may be relevant to defendant's decision to exclude plaintiff from the competitive range and therefore should be made part of the record before the court.

Next, this court denies plaintiff's request for the production of all documents pertaining to defendant's evaluation of the cost aspects of plaintiff's proposal, particularly plaintiff's wage rate and alleged plans to subsidize the wage rate. In its opposition to plaintiff's motion, defendant specifically states that "the information forming the basis for defendant's conclusions regarding these issues is contained within the administrative record and *no other documentation exists.*" [5] The signature of defendant's counsel on this filing "constitutes a certificate ... that to the best of [his] knowledge, information, and belief formed after reasonable inquiry [this representation] is well grounded in fact." RCFC 11. Clearly, defendant can-

not be compelled to produce that which does not exist.

Similarly, this court denies plaintiff's request for the production of all documents relating to defendant's contacts with the GKDC concerning lease costs and BAFOs. Plaintiff has failed to demonstrate either the relevance of these unnamed documents to the present action, or the court's need for such documents in reviewing defendant's decision to exclude plaintiff from the competitive range. Contrary to plaintiff's assertions, this court also concludes that the record contains sufficient evidence concerning lease costs such that the court may clearly understand this issue.

Turning now to the request of plaintiff's counsel for permission to conduct depositions of eleven of defendant's employees, this court initially notes that, in certain circumstances, the court may compel contracting officials who participate in procurement-related evaluations and decisionmaking to give testimony explaining their actions. *Cubic I,* 37 Fed. Cl. at 344–45 (permitting limited deposition testimony from the contracting officer). Nevertheless, inquiry into the mental processes of administrative decisionmakers is generally to be avoided. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). Indeed, absent a strong showing of bad faith on the part of the procuring officials, it is improper for the court to permit such inquiry. *Cochran v. United States,* 3 Cl.Ct. 3, 4 (1983), *aff'd,* 732 F.2d 168 (Fed.Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984); *see also Terrell v. United States,* 7 Cl.Ct. 171, 174 n. 2 (1984), *aff'd,* 785 F.2d 323 (Fed.Cir. 1985), *cert. denied,* 479 U.S. 834, 107 S.Ct. 129, 93 L.Ed.2d 73 (1986).

Much of the deposition testimony plaintiff seeks goes directly to the mental processes of the individuals who participated in the evaluations that ultimately resulted in the exclusion of plaintiff's proposal from the competitive range. The record, however, contains contemporaneous explanations of

---

4. Plaintiff's Motion to Compel Discovery (Pl.'s Mot.) at 3.

5. Defendant's Opposition to Plaintiff's Motion to Compel Discovery (Def.'s Opp.) at 8–9 (emphasis added).

these officials conclusions.[6] In addition, plaintiff has failed to show bad faith on the part of the procuring officials such that inquiry into the mental processes of the officials would be permissible. *See Cochran*, 3 Cl.Ct. at 4. Plaintiff's failure to make this requisite showing is especially significant given the well-established principle that contracting officials are presumed to act in good faith when executing their procurement functions. *See Finley v. United States*, 31 Fed. Cl. 704, 706 (1994), *appeal dismissed*, 50 F.3d 21 (Fed. Cir.1995). Consequently, this court denies the request of plaintiff's counsel to depose the leader of the Source Selection Evaluation Board team and the leader of the technical team as to the grounds for their determinations regarding plaintiff's proposal. Because these team leaders cannot be questioned about their mental processes, "it necessarily follows that other [Air Force] personnel involved in the [evaluation process] cannot be quizzed as to why the various intermediate [evaluation decisions were made]." *Standard Mfg. Co. v. United States*, 7 Cl.Ct. 13, 16 (1984). This court therefore also denies plaintiff's deposition requests numbered five through eleven.

■ This court, however, reaches a different conclusion with respect to the request of plaintiff's counsel to depose Ms. Darleen A. Druyan, the SSA on this procurement. Plaintiff indicates that "[t]he documents in the [a]dministrative record which record the evaluation process are not self explanatory, particularly [t]abs 4 through 10. . . . the purpose and significance of these documents [to the SSA's determination] is not addressed in the record."[7] Given her position, Ms. Druyan should be able to adequately explain the structure of the record, as well as the relationship between its various parts.[8] In conducting the deposition of Ms. Druyan, plaintiff's counsel is permitted to inquire only into the aforementioned structure and relation-

ship. Plaintiff's counsel may not ask Ms. Druyan to explain the mental processes underlying either the decision to exclude plaintiff's proposal from the competitive range or the conclusions contained in the documents that comprise the record.

■ In addition, this court permits plaintiff's counsel to conduct a limited deposition of Ms. Jessie M. Simpson, the contracting officer on this procurement, in order to clarify one point raised in plaintiff's filings but not addressed in the record. *See Graphicdata*, 37 Fed. Cl. at 780 (allowing limited inquiry in order to obtain a response not contained in the record). Specifically, plaintiff suggests that an impermissible comparison may have been made between plaintiff's proposal and the proposals of other offerors prior to defendant's decision to exclude plaintiff's proposal from the competitive range.[9] In response to plaintiff's allegation, defendant offers the following declaration of Ms. Simpson:

> Air Force source selection guidelines specifically require that proposals be evaluated individually against the standards formulated before the proposals are received. Evaluators are not permitted to compare proposals. The different approaches offered by each proposal are presented together only for consideration by the SSA in making the source selection [i.e., contract award] decision.[10]

In light of plaintiff's allegations, this court determines that clarification of Ms. Simpson's statement will be helpful to its review of defendant's actions in the present case. This court therefore grants the request of plaintiff's counsel to depose Ms. Simpson but limits the scope of inquiry to the specific question of whether any comparison was made between plaintiff's proposal and proposals submitted by other offerors prior

6. For example, the technical evaluation worksheets of members of the technical evaluation team are contained at tab 9 of the administrative record. Likewise, the cost evaluation worksheets of members of the cost evaluation team are included at tab 10 of the administrative record.

7. Pl.'s Mot. at 5.

8. Defendant itself suggested that, in the event the court sought clarification, it could require defendant to submit a declaration explaining these matters. *See* Def.'s Opp. at 7.

9. Pl.'s Mot. at 5.

10. Def.'s Opp., Attachment 3 at 2–3.

to defendant's decision to exclude plaintiff's proposal from the competitive range. *See Planning Research Corp. v. United States,* 4 Cl.Ct. 283, 298 (1983) (noting that the court had allowed a deposition of the contracting officer but limited the scope of the deposition to an inquiry into matters of fact only). Such an inquiry precisely illustrates the reason that the court allows for clarification of the administrative record in certain situations. *Graphicdata,* 37 Fed. Cl. at 780 (recognizing the need for supplementation of the record where the plaintiff was alleging that defendant had violated its own procurement regulations).

Finally, this court notes that its discovery rulings are wholly dependent upon the particular facts of this case and provide no indication as to how the court will rule on future discovery disputes. To hold otherwise "would be opening a Pandora's box of frivolous lawsuits intended only to gain access to the full administrative record or to delay or unduly burden agency actions." *Planning Research,* 4 Cl.Ct. at 298.

### Conclusion

Based upon the foregoing, plaintiff's motion to compel discovery is granted in part and denied in part. Additionally, with regard to further proceedings in this case, the following is hereby ORDERED:

1. Limited discovery is to proceed immediately in accordance with the conditions set out in this opinion and order. The two depositions shall be filed with the court and made part of the record.

2. The parties shall file cross-motions for summary judgment with accompanying proposed findings of uncontroverted fact pursuant to RCFC 56 by July 14, 1997.

3. Responses thereto shall be filed by July 16, 1997, with no further replies to be filed.

4. Oral argument on the parties' cross-motions is scheduled for Monday, July 21, 1997, at 2:00 p.m. These proceedings will take place in the National Courts Building, 717 Madison Place, N.W., Washington, D.C. The exact location of the courtroom will be posted on the bulletin board in the lobby.

Each party shall have up to one hour for argument, with an additional fifteen minutes for rebuttal.

IT IS SO ORDERED.

